UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

STUART MARTIN,

                                    NO. CIV. S-05-2167 FCD KJM

         Plaintiff,

    v.                              MEMORANDUM AND ORDER

CITY OF SOUTH LAKE TAHOE, a
chartered city, SOUTH LAKE
TAHOE POLICE DEPARTMENT, a
police agency, SCOTT HENG,
JOSH ADLER, B. AUXIER, B.
McGUCKIN, SHANNAN NORRGARD,
DONNA KINGMAN, JEFF REAGAN,
BRAD WILLIAMS all individually
and as an officer of SOUTH
LAKE TAHOE POLICE DEPARTMENT;
and DOES ONE through THIRTY
inclusive,

         Defendants.

----oo0oo----

    This matter comes before the court on defendants' motion for
summary judgment pursuant to Rule 56 of the Federal Rules of
Civil Procedure.  Plaintiff opposes the motion.  For the reasons

set forth below,[1] defendants' motion is GRANTED in part and
DENIED in part.

**BACKGROUND**[2]

This case arises out of defendants' execution of a search
warrant, during which plaintiff Stuart Martin ("Martin") was
shot.  On November 2, 2004, a search warrant for stolen weapons
was executed at the residence located at 820 Tahoe Keyes
Boulevard, South Lake Tahoe, California.  (UF ¶ 1).  The search
warrant was written by defendant Shannon Norrgard ("Norrgard").
(UF ¶ 2).  Both South Lake Tahoe Police and officers of the
organization known as SLEDNET were executing the search warrant.
(UF ¶ 4).  SLEDNET is an inter-agency task force team that
focuses on drug and narcotics crimes.  (UF ¶ 5).

On the morning of November 2, 2004, there was a briefing
prior to the execution of the search warrant.  (UF ¶ 8).  During
the briefing, numerous items were discussed, including the
location of the residence, the items to be searched, and the
assignments of officers upon approach of the house.  (UF ¶ 9).

---

[1]     Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
<u>See</u> E.D. Cal. L.R. 78-230(h).

[2]     Unless otherwise noted, the facts herein are
undisputed.  (<u>See</u> Pls.' Am. Separate Stmt. of Undisp. and Disp.
Material Facts in Opp'n to Defs.' Mot. ("UF"), filed June 22,
2007).  Where the facts are in dispute, the court recounts
plaintiff's version of the facts. (<u>See</u> Pls.' Separate Stmt. of
Disp. Facts in Opp'n to Defs.' Mot. ("DF"), filed June 22, 2007).

        Defendants object to various pieces of evidence that
plaintiff presents in support of his motion.  Much of the
evidence that defendants object to is immaterial to the court's
analysis of the summary judgment motion.  To the extent that the
evidence is relevant, defendants' objections are OVERRULED.

It was decided that a "flash bang" diversionary device would be deployed in the execution of the search. (UF ¶ 14).

Plaintiff asserts that South Lake Tahoe Police Department ("SLTPD") personnel were not trained to execute a search warrant with the use of a diversionary device and that SLEDNET did not instruct SLTPD officers on how the device was going to be deployed. (DF ¶ 1). Plaintiff also contends that surveillance of a house should be done prior to executing a search warrant, but neither SLTPD nor SLEDNET conducted surveillance prior to the execution of the warrant on November 2, 2004. (DF ¶¶ 2-6).

Officers arrived at 820 Tahoe Keys Boulevard during the morning hours. (UF ¶ 16). Defendant Jeff Reagan ("Reagan") was assigned to cover the front carport area of the residence with defendants Brad Williams ("Williams") and Donna Kingman ("Kingman"). (UF ¶ 18). The car port had a lot of "junk" in it. (UF ¶ 17). Williams was assigned to cover the front carport area of the residence and the door that led into the home. (UF ¶ 19). He was positioned approximately 25 feet from the door, and could watch the interior through the open door. (UF ¶¶ 21-22). Williams used a pine tree and a group of trashcans for cover in case shots were exchanged. (UF ¶¶ 22-23; DF ¶ 10). Williams held his firearm in a "low ready position." (UF ¶ 25). Reagan covered the left side of the carport area, taking cover behind an overturned fiberglass shower stall. (UF ¶ 27). Defendants assert that the shower stall did not offer much cover if shots were to be exchanged. (UF ¶ 28). Plaintiff contends that while Reagan's upper body was exposed above the shower stall, he could have crouched down behind it. (UF ¶ 28). Reagan was in the most

3

"forward" position of the three officers and was concerned about the possibility of being shot. (UF ¶¶ 29-30).

Task Force Commander Chris Elliott of SLEDNET deployed the "flash bang" diversionary device. (UF ¶ 14). There was a "knock and announcement" after the device was deployed, but before the gunshot. (UF ¶ 35).[3] Plaintiff ran toward the doorway leading to the carport. (UF ¶ 37). In his hand, he was carrying a dark blue bandana with some white print on it. (UF ¶ 39; Dep. of Stuart Martin ("Martin Dep.") at 30:24-31:2).

Williams heard the "flash bang" device go off as a loud boom, but did not jump or react in any way. (UF ¶¶ 33-34). Williams first saw plaintiff as he was in the process of exiting the door. (UF ¶ 44; Dep. of Phillip Bradley Williams ("Williams Dep.") at 57:15-16). Plaintiff was running fairly straight, at a slight angle, toward Williams or the street. (UF ¶ 45; Williams Dep. at 57:21-22). Williams believed he saw a fire-arm that looked like a semi-automatic in plaintiff's hand. (UF ¶ 49; Williams Dep. at 52:14-18). Williams testified that he saw plaintiff turn, look at Reagan, and raise his right arm up to shoulder height. (Williams Dep. at 59:4-24). Williams believed that the officers were in danger and that plaintiff was going to kill Reagan. (UF ¶ 55). Williams fired a round at plaintiff, (Williams Dep. at 51:22-23), and plaintiff fell down immediately

---

[3]     Plaintiff contends that SLEDNET was in the middle of the knock/notice when the gunshot was heard. (UF ¶ 35). However, the testimony cited by plaintiff provides that the gun shot was heard "after at least one time knock and notice was given." (Dep. of Chris Elliott ("Elliott Dep.") at 37:11-12).

upon being shot.  (UF ¶ 51).  Defendants contend that a bandana and pipe were found on the ground near plaintiff.  (UF ¶ 40).

After the "flash bang" device was detonated, Reagan heard someone running through the house and saw plaintiff run through the door.  (UF ¶¶ 59-60; Reagan Dep. at 37:11-38:13).  Reagan saw plaintiff holding something dark colored that was protruding from his hand as he was running out of the residence.  (UF ¶ 42; Dep. of Jeffrey Reagan ("Reagan Dep." at 50:8-18).[4]  Reagan believed that plaintiff was holding the item in a threatening manner and thought it was a gun.  (UF ¶ 43; Reagan Dep. at 50:14-51:6).  Reagan prepared to engage him.  (UF ¶ 63).  One shot was fired, and plaintiff was shot.  (UF ¶¶ 66-67).  Reagan heard the gunshot after plaintiff had already crossed his vision.  (UF ¶ 61).

Plaintiff asserts that he did not have a gun in his hands.  (DF ¶ 19).  Plaintiff contends that he had both hands together in front of him when he came running out of the house, and that he did not make eye contact with Williams or look at Reagan.  (UF ¶ 53; DF ¶¶ 17-18).  Plaintiff also asserts that he made it to the side doorway, and the next thing he knew, he was on the ground, "twisted."  (UF ¶ 52).

Plaintiff contends that after he was shot and after the house was secured, defendant Scott Heng ("Heng") went around to the carport.  (UF ¶ 88; DF ¶ 34).  Heng saw plaintiff lying on the carport, and plaintiff told Heng "you f***ing shot me."  (UF

---

[4]   Plaintiff "disputes" this fact, but the evidence cited to does not contradict defendants' evidence.  Where there are other such "disputed" facts without citation to evidence that raises a triable issue, the court will treat such facts as undisputed.

¶ 88).  Heng told plaintiff that he didn't shoot him and to shut up.  (UF ¶ 88).  Heng also said "Hi Stuie" to plaintiff; plaintiff knew Heng from being a high school cop.  (UF ¶¶ 88; 91).  Heng commanded plaintiff to open his hand, but plaintiff was unable to do so.  (DF ¶ 35).  Subsequently, Reagan pulled the bandana out of plaintiff's hand.  (DF ¶ 36).

Plaintiff was arrested for violation of Penal Code §§ 69 and 148(A)(1).  (UF ¶ 72).  He received medical treatment in the carport area after being handcuffed following the incident.  (UF ¶ 73).  After approximately thirty minutes, plaintiff was transported by ambulance to the Emergency Room at Barton Memorial Hospital.  (UF ¶ 74).  Subsequently, he went to the El Dorado County Jail, where he was released after approximately ten hours.  (UF ¶¶ 77-78).

Defendant Josh Adler ("Adler") was a part of the "stack" making entry after deployment of the "flash bang" device.  (UF ¶ 81).  Defendant Heng was also part of the "stack" making entry after deployment of the "flash bang" device.  (Dep. of Scott Heng ("Heng Dep.") at 24:18-20).  Defendant Brandon Auxier ("Auxier") was assigned to cover the rear of the residence.  (UF ¶ 82).  Defendant Kingman was stationed in the front of the residence near the carport area, and was to cover the window for safety.  (UF ¶¶ 84-85).  Kingman did not see plaintiff come out of the house and get shot.  (DF ¶ 30).  Defendant Norrgard was assigned to behind the perimeter fence in the back of the residence.  (UF ¶ 90).

On October 27, 2005, plaintiff filed a complaint, alleging violations of his constitutional rights under the Fourth, Sixth,

and Fourteenth Amendments based upon the use of excessive force and unreasonable search and seizure.   Plaintiff brings these constitutional claims pursuant to 42 U.S.C. § 1983.   Plaintiff also brings state law claims under the Bane Civil Rights Act and for assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, and negligence.   On May 15, 2007, defendants filed a motion for summary judgment, or in the alternative, summary adjudication.[5]

**STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

[5]   On June 15, 2007, defendants filed objections to plaintiff's filings in opposition to their motion for summary judgment on the basis that they were out of compliance with the Local Rules for various reasons.   By minute order, the court sustained the objections and plaintiff's filings were stricken. Plaintiff was allowed to re-file his submissions by June 22, 2007 at 4:00 p.m.   On June 29, 2007, defendants again objected to plaintiff's filings.   Specifically, defendants point to plaintiff's failure to electronically file copies of his exhibits.   However, plaintiff filed courtesy copies of these exhibits with the court and has subsequently filed them electronically.   Defendants also assert that plaintiff's filings were untimely because they were filed up to forty-eight minutes late.   The court finds no prejudice from this delay.   Defendants' objections are OVERRULED, and their motion to strike plaintiff's filings is DENIED.

_Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  _Id._ at 324.  Indeed, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  _Id._ at 322.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  _Id._ at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 585-87 (1986); _First Nat'l Bank v. Cities Serv. Co._, 391 U.S. 253, 288-89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that

a reasonable jury could return a verdict for the nonmoving party,
id. at 251-52.

In the endeavor to establish the existence of a factual
dispute, the opposing party need not establish a material issue
of fact conclusively in its favor.  It is sufficient that "the
claimed factual dispute be shown to require a jury or judge to
resolve the parties' differing versions of the truth at trial."
First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary
judgment is to 'pierce the pleadings and to assess the proof in
order to see whether there is a genuine need for trial.'"
Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory
committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines
the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any.  Rule
56(c); SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir.
1982).  The evidence of the opposing party is to be believed, and
all reasonable inferences that may be drawn from the facts placed
before the court must be drawn in favor of the opposing party.
Anderson, 477 U.S. at 255.  Nevertheless, inferences are not
drawn out of the air, and it is the opposing party's obligation
to produce a factual predicate from which the inference may be
drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,
1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party
"must do more than simply show that there is some metaphysical
doubt as to the material facts. . . . Where the record taken as a
whole could not lead a rational trier of fact to find for the

1  nonmoving party, there is no 'genuine issue for trial.'"
2  Matsushita, 475 U.S. at 586-87.

3                            **ANALYSIS**

4  **I.   42 U.S.C. § 1983[6]**

5       42 U.S.C. § 1983 provides, in relevant part, that "[e]very
6  person who, under color of any statute, ordinance, regulation,
7  custom, or usage, of any State . . . subjects, or causes to be
8  subjected, any citizen . . . to the deprivation of any rights,
9  privileges, or immunities secured by the Constitution and laws,
10 shall be liable to the party injured . . . ."  Section 1983
11 confers no substantive rights itself, but rather, "provides
12 remedies for deprivations of rights established elsewhere."  City
13 of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

14      **A.   Fourth Amendment**

15      Plaintiff Martin brings claims against the individual
16 defendant officers, the SLTPD, and the City of South Lake Tahoe
17 pursuant to 42 U.S.C. § 1983 for violations of his Fourth
18 Amendment right to be free from excessive force and unreasonable
19 search and seizure.  Defendants move for summary judgment on the
20 ground that the claims fail as a matter of law and that the
21 officers are entitled to qualified immunity.

22           **1.   Excessive Force against the Individual Defendants**
23      Plaintiff Martin contends that the individual officers
24 violated his Fourth Amendment rights by using excessive force.

25 ─────────────────
26      [6]    In his complaint, plaintiff alleges that defendants
   violated his rights pursuant to 42 U.S.C. § 1981.  (Compl. ¶ 39).
27 However, plaintiff fails to address the merits of this claim in
   his opposition or make any argument that he was discriminated
28 against on the basis of race.  Therefore, plaintiff's § 1981
   claim is DISMISSED.

Plaintiff's claim arises out of defendant Williams' conduct in shooting plaintiff.  Plaintiff has failed to identify or present evidence regarding the use of any force upon him by any other named individual defendant.  See Jones v. Williams, 297 F.3d 930, 939 (9th Cir. 2002) ("We reject the idea that mere presence at a search of membership in a group, without personal involvement in and a causal connection to the unlawful act, can create liability under section 1983.").  As such, defendants Heng, Adler, Auxier, McGuckin, Norrgard, Kingman, and Reagan's motion for summary judgment regarding plaintiff's claims for excessive force in violation of the Fourth Amendment is GRANTED.

Defendant Williams argues that plaintiff's claims for excessive force against him should be dismissed because his complaint alleges that "Detective Brian Willson" and/or "Detective Brian Williams" shot plaintiff and violated his rights.  (Compl. ¶¶ 28, 32).  Defendant argues that plaintiff's failure to amend the complaint to correct his alleged error is prejudicial because it negates his Answer to the complaint.  Plaintiff asserts that he mistakenly referred to defendant Williams as "Brian Willson" and "Brian William" in the allegations of the complaint.  Plaintiff requests that the court permit him to amend the complaint to strike those names and correctly replace it with the name of the defendant, Brad Williams.

Plaintiff's motion to amend the complaint to cure his mistake regarding defendant's name is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure.  Rule 16 provides that a party seeking amendment to a pretrial scheduling order

1    demonstrate good cause.  Fed. R. Civ. Proc. 16 (West 2007).  Rule

2    15 provides that "leave [to amend] is to be freely given when

3    justice so requires."  Fed. R. Civ. Proc. 15 (West 2007).

4    "[L]eave to amend should be granted unless amendment would cause

5    prejudice to the opposing party, is sought in bad faith, is

6    futile, or creates undue delay."  Martinez v. Newport Beach, 125

7    F.3d 777, 785 (9th Cir. 1997).

8         There is no evidence before the court that the requested

9    modification of the complaint would prejudice defendant Williams

10   in this litigation.  The modification does not change the parties

11   to this action.  Since the inception of this litigation,

12   defendant Williams has been a named defendant; there has never

13   been a served defendant named Brian Willson or Brian Williams.

14   Further, there appears to have been no confusion during the

15   course of discovery that defendant Brad Williams shot plaintiff;

16   defendants admitted as such in their Response to Plaintiff's

17   Request for Admissions.  (Ex. 19 to Decl. of Christopher W.

18   Goodroe in Opp'n to Defs.' Mot. for Summ. J. ("Goodroe Decl."),

19   filed June 22, 2007, at 3).  Defendants merely contend that they

20   "would have had the opportunity to file an Answer to the Amended

21   Complaint setting forth the proper admissions, denials, and

22   affirmative defenses." (Defs.' Further Reply to Pl.'s Opp'n,

23   filed June 29, 2-7, at 5).  However, defendants fail to identify,

24   in any meaningful way, how this amended Answer would have changed

25   the scope of the litigation.  Rather, the court finds that

26   plaintiff's proposed modification does not substantively change

27   the nature of this litigation.  As such, the court finds good

28   cause to amend the pretrial scheduling order to allow plaintiff

1   to amend the complaint solely to correct the asserted mistake

2   regarding defendant Williams' name in the allegations of the

3   complaint.  See also 59 Am. Jur. 2d Parties § 409 ("Under modern

4   practice, if the right party is before the court, although under

5   a wrong name, an amendment to cure a misnomer of parties will be

6   allowed. . . . Corrections of misnomers are permitted under Fed.

7   R. Civ. Proc. 15(c).).  Therefore, defendant Williams' argument

8   that summary judgment should be granted based upon plaintiff's

9   allegation that he was shot by Brian Willson and/or Brian

10  Williams fails.

11      Plaintiff Martin argues that defendant Williams violated his

12  constitutional rights by using excessive force against him during

13  the execution of the search warrant.  Whether a law enforcement

14  official used excessive force is properly analyzed under the

15  Fourth Amendment's objective reasonableness standard.  Graham v.

16  Connor, 490 U.S. 386, 388 (1989).

17          Determining whether the force used to effect a
            particular seizure is 'reasonable' under the Fourth
18          Amendment requires a careful balancing of 'the nature
            and quality of the intrusion on the individual's Fourth
19          Amendment interests' against the countervailing
            governmental interests at stake.
20

21  Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)).

22  The reasonableness of a particular use of force must be evaluated

23  from the perspective of a reasonable officer on the scene.  Id.

24  A proper application of the reasonableness inquiry

25          requires careful attention to the facts and
            circumstances of each particular case, including the
26          severity of the crime at issue, whether the suspect
            poses an immediate threat to the safety of the officers
27          or others, and whether he is actively resisting arrest
            or attempting to evade arrest by flight.
28

13

Robinson v. Solano County, 278 F.3d 1007, 1013-14 (9th Cir. 2002) (internal quotations omitted); see also McKenzie v. Lamb, 738 F.2d 1005, 1011 (9th Cir. 1984) (the determination requires the analysis of factors such as "the requirements for the officers' safety, the motivation for the arrest, and the extent of the injury inflicted").

Defendant Williams argues that the level of force used while executing the warrant was reasonable under the circumstances. Defendant Williams also argues that even if the force was in some way excessive, he is protected from liability under the doctrine of qualified immunity.  The doctrine of qualified immunity protects from suit government officers who do not knowingly violate the law.  Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994).  Qualified immunity is a generous standard designed to protect "all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 495 (1991) (citation omitted).  A law officer can establish qualified immunity by demonstrating (1) that the law governing the officer's conduct was not clearly established at the time of the challenged actions, or (2) that under the clearly established law, an officer could reasonably have believed that the alleged conduct was lawful.  See Katz v. United States, 194 F.3d 962, 967 (9th Cir. 1999); Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir. 1994); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (observing that police officers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

14

1    The question of immunity generally is not one for the jury.
2  Qualified immunity "is an immunity from suit rather than a mere
3  defense to liability." Hunter v. Bryant, 502 U.S. 224, 228
4  (1991) (citation omitted).  Therefore, immunity ordinarily should
5  be decided by the court before trial." Id.  However, if a
6  genuine issue of material fact exists regarding the circumstances
7  under which the officer acted, then the court should make the
8  determination after the facts have been developed at trial. Act
9  Up!\Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).  The
10  initial inquiry that the court must make to determine whether an
11  official is entitled to qualified immunity is whether, "[t]aken
12  in the light most favorable to the party asserting the injury, do
13  the facts alleged show the officer's conduct violated a
14  constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001)
15  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The next
16  inquiry is whether the constitutional right was clearly
17  established. Id.  The contours of the right must be sufficiently
18  clear that a reasonable official would understand that what he is
19  doing violates that right. Id.  The salient question is whether
20  the law at the time of the disputed conduct gave defendants "fair
21  warning that their alleged treatment of plaintiffs was
22  unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002).
23    Some of the facts leading to the shooting of plaintiff
24  Martin are undisputed by the parties.  Neither plaintiff nor
25  defendant dispute that the SLTPD and SLEDNET were executing a
26  warrant for stolen weapons.  (UF ¶ 3).  Further, defendant
27  Williams did not tell plaintiff to freeze or stop nor did he
28

identify himself as a police officer when plaintiff appeared in the doorway.  (DF ¶ 16).

However, other facts surrounding the circumstances leading to defendant Williams' shooting of plaintiff are in dispute. Defendant Williams contends that he saw a gun in plaintiff Martin's right hand as he was running from the house.  Williams testified that when plaintiff had run about three to four feet out of the house, defendant saw him turn and look at defendant Reagan and raise his right arm about shoulder height.  (Williams Dep. at 59:4-24).  Williams also testified that plaintiff's hand was in a fist, wrapped around the butt of a gun, which resembled a Ruger.  (Id.)  In contrast, plaintiff contends that when he heard the diversionary device go off, he believed it was a gas line explosion.  (Martin Dep. at 22:14-25).  Plaintiff testified that he had a blue bandanna in his hand.  (Id. at 30:21-23). Plaintiff also testified that after hearing the loud noise from the diversionary device, he ran, made it to the side doorway, and then was immediately "twisted" on the ground from the gunshot. (See id. at 23:5-16).

"Where such disputes [of fact] exist, summary judgment is appropriate only if defendants are entitled to qualified immunity on the facts alleged by the non-moving party." Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007) (citing Barlow v. Ground, 943 F.2d 1132, 1136 (9th Cir. 1991)).  Therefore, the court must view the disputed facts in favor of plaintiff Martin.

The law is well-established that a police officer may use "deadly force to effect the arrest of a fleeing felon, if under the circumstance, he reasonably believed such force was necessary

to protect himself or others from death or serious physical harm. Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991) (citing Tennessee v. Garner, 471 U.S. 1, 11 (1985)).  However, a desire to resolve quickly a potentially dangerous situation does not, standing alone, justify the use of force that could cause serious injury.  Deorle v. Rutherford, 272 F.2d 1272, 1281 (9th Cir. 2001).  "There must be other significant circumstances that warrant the use of such a degree of force at the time it is used."  Id.  Moreover, the Ninth Circuit has held that an officer's use of deadly force is not lawful where the suspect did not point the gun at the officers and was not facing them when the first shot was fired by the officers.  Curnow, 952 F.2d at 325 (denying the defendants' motion for summary judgment and finding that the defendants were not entitled to qualified immunity).

Under plaintiff's version of the facts, he was shot while he ran out of a house because of what he thought was a gas leak explosion.  Plaintiff was unarmed and was not advised to freeze or stop by defendant Williams.  Plaintiff's version of the facts implicitly asserts that plaintiff did not see the officers and that he did not look at defendant Reagan or raise his arm in a threatening manner.  At that time, defendant Williams did not have knowledge that plaintiff had committed or was committing a crime.[7]  Cf. Blanford v. Sacramento County, 406 F.3d 1110, 1119

---

[7]     Plaintiff was subsequently arrested pursuant to California Penal Code §§ 148(a) and § 69 for obstructing and resisting the police officers.  However, there is no evidence that defendants had reason to believe that plaintiff was committing a crime prior to the incident at issue in this
(continued...)

1  (holding that the defendant officers were entitled to qualified

2  immunity for shooting and severely injuring the plaintiff where

3  the plaintiff, whom defendants knew had committed a crime, was

4  armed with a dangerous weapon, was told to stop and drop it, was

5  warned that he would be shot if he didn't comply, refused to let

6  go of the sword, and raised the sword and grunted).  Thus, under

7  plaintiff Martin's version of the shooting, defendant Williams

8  would not have reasonably believed the use of deadly force was

9  lawful because, even if defendant Williams believed plaintiff had

10  a gun, there did not exist other significant circumstances that

11  warranted the use of deadly force.  <u>See</u> <u>Curnow</u>, 952 F.2d at 325.

12  Therefore, defendant William's motion for summary judgment

13  regarding plaintiff's § 1983 claims for excessive force in

14  violation of his Fourth Amendment rights is DENIED.

**2.  Unreasonable Search and Seizure against the Individual Defendants**

17      Plaintiff Martin contends that the individual officers

18  violated his Fourth Amendment rights by their unreasonable search

19  and seizure of him.  Specifically, plaintiff asserts that

20  defendants arrested him without probable cause.

21      "Probable cause exists when the police know 'reasonably

22  trustworthy information sufficient to warrant a prudent person in

23  believing that the accused had committed or was committing an

24  offense.'"  <u>United States v. Del Vizo</u>, 918 F.2d 821, 825 (9th

25  Cir. 1990) (quoting <u>United States v. Delgadillo-Velasquez</u>, 856

26  F.2d 1292, 1296 (9th Cir. 1988)).  "In evaluating a custodial

27

28      [7](...continued)
    litigation.

18

arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." Pierce v. Multnomah County, 76 F.3d 1032, 1938 (9th Cir. 1996) (internal quotations omitted).  California law requires that the court look to the totality of the circumstances known by the officer to decide whether the officer's determination of probable cause was reasonable.  See People v. Guajardo, 23 Cal. App. 4th 1738 (1994); Agar v. Superior Court, 21 Cal. App. 3d 24, 29 (1971).

While plaintiff generally asserts that the individual defendants violated his constitutional rights by arresting him without probable cause, aside from defendant Williams, plaintiff fails to identify which individual officers were involved in the arrest.[8]  Plaintiff does present evidence that all individual defendants were present at the scene of the alleged violation. However, the Ninth Circuit has held that merely being present at the scene of an alleged unlawful act is an insufficient basis for individual liability under § 1983.  Jones, 297 F.3d at 936.  As such, because plaintiff has failed to present evidence of defendants Heng, Adler, Auxier, McGuckin, Norrgard, Kingman, and/or Reagan's personal involvement in the arrest, a prerequisite to a finding of liability, defendants Heng, Adler, Auxier, McGuckin, Norrgard, Kingman, and Reagan's motion for

---

[8]     Because defendant Williams effected the stop of plaintiff through the intrusive means of shooting him, under the circumstances of the case, it is clear that defendant Williams was involved in plaintiff's arrest.  See Stevens v. Rose, 298 F.3d 880, 883-84 (9th Cir. 2002) (holding that the defendants had arrested the plaintiff when they gave chase to the plaintiff and tackled him).

19

1  summary judgment regarding plaintiff's § 1983 claims for

2  unreasonable search and seizure in violation of his Fourth

3  Amendment rights is GRANTED.

4       Defendant Williams argues that he had probable cause to

5  arrest plaintiff after he ran from the residence where the

6  defendant officers were executing the search warrant.  Plaintiff

7  was placed under arrest for violation of California Penal Code §§

8  148(a) and § 69.  These sections criminalize resisting or

9  obstructing officers in the discharge of their duties.  <u>See</u> Cal.

10 Penal Code §§ 148(a), 69 (West 2007).  Defendant Williams

11 contends that under his version of the facts, plaintiff's actions

12 following the detonation of the diversionary device gave him

13 reasonable cause to believe that plaintiff was violating these

14 sections.  However, under plaintiff's version of the facts,

15 plaintiff Martin merely ran out of the door after hearing a loud

16 bang, which he thought was an explosion, and was immediately shot

17 by defendant Williams without any provocation.

18      At the time of plaintiff's arrest, the law regarding the

19 fundamental right to be protected from unlawful arrests was

20 clear.  Individuals have a right to be free from unreasonable

21 seizures unless there is probable cause to arrest.  <u>See</u> <u>MacKinney</u>

22 <u>v. Nielsen</u>, 69 F.3d 1002, 1006 (9th Cir. 1995) (police officer

23 did not have probable cause to arrest an individual pursuant to

24 Penal Code § 148 where officer was in unmarked car, the plaintiff

25 made the plausible claim that he did not know it was the police

26 who gave the order, and the plaintiff's disobedience was only

27 momentary); <u>see</u> <u>People v. Patino</u>, 95 Cal. App. 3d 11, 27 (1979)

28 ("The crime of obstructing or resisting an officer in the

performance of his duties, Cal. Pen. Code § 69, would appear to
require an act done with the specific intent to interfere with
the officer's performance of his duties."). Viewing the facts in
the light most favorable to plaintiff, no reasonable officer
would have thought there was probable cause to arrest plaintiff
based solely on the fact that he ran out of the house after a
"flash bang" device was detonated. As such, plaintiff has raised
a triable issue of fact regarding whether defendant Williams had
probable cause to arrest him, and thus, defendant William's
motion for summary judgment regarding plaintiff's § 1983 claims
for unreasonable search and seizure in violation of his Fourth
Amendment rights is DENIED.

### 3. __Monell__ Claims against the City and SLTPD

Plaintiff asserts that defendant City of South Lake Tahoe
and the SLTPD is liable under § 1983. Under __Monell__ and its
progeny, a plaintiff may hold a municipality liable under section
1983 if his injury was inflicted pursuant to city policy,
regulation, custom, or usage. __Chew v. Gates__, 27 F.3d 1432, 1444
(9th Cir. 1994) (citing __Monell__, 436 U.S. at 690-91, 694). The
existence of a city policy may be established in one of three
ways:

> First, the plaintiff may prove that a city employee
> committed the alleged constitutional violation pursuant
> to a formal governmental policy or a longstanding
> practice or custom which constitutes the standard
> operating procedure of the local governmental entity.
> Second, the plaintiff may establish that the individual
> who committed the constitutional tort was an official
> with final policy-making authority and that the
> challenged action itself thus constituted an act of
> official governmental policy. Third, the plaintiff may
> prove that an official with final policy-making
> authority ratified a subordinate's unconstitutional
> decision or action and the basis for it.

1  <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) (quoting
2  <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992)
3  (citations and internal quotations omitted)).  Assuming that a
4  plaintiff can establish one of these three circumstances, he must
5  then demonstrate that the municipal policy "caused" the
6  constitutional deprivation.  <u>Id.</u>  A municipal policy "causes"
7  injury where it is the "moving force" behind the violation.
8  <u>Chew</u>, 27 F.3d at 1444 (citing <u>Monell</u>, 436 U.S. at 690-91, 694).

9       Plaintiff bases his claims against the City of South Lake
10 Tahoe and the SLTPD on his assertion that they failed to properly
11 train the individual defendants and that such failure was the
12 moving force behind the violation of his constitutional rights.[9]
13 Specifically, plaintiff contends that defendant SLTPD failed to
14 provide any training to its personnel on how to execute a search
15 warrant when using a diversionary device, and as a result,
16 defendant Williams irrationally shot plaintiff without
17 provocation after the device went off.  Defendants contend that
18 there no evidence suggesting that the City deliberately failed to
19 train or control its officers as to reactions of individuals to
20 the deployment of a flash-bang device.

21      The Supreme Court has stated "that there are limited
22 circumstances in which an allegation of a 'failure to train' can
23 be the basis of liability under § 1983."  <u>City of Canton v.</u>
24 <u>Harris</u>, 489 U.S. 378, 387 (1989).  "[T]he inadequacy of police

25 _____

26      [9]   Plaintiff's opposition only addresses a theory of
   <u>Monell</u> liability based upon defendants' alleged failure to train.
27 To the extent plaintiff's complaint alleged other theories as a
   basis for a <u>Monell</u> claim, plaintiff has failed to support such
28 theories with evidence or argument, and any potential claims
   arising out of these theories are DISMISSED.

training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. It is insufficient "to prove that an injury or accident could have been avoided if an officer had better or more training." Id. at 390.  Rather, liability attaches where

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in a violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Id. at 390-91.  Moreover, plaintiff must present evidence that "the identified deficiency in a city's training program must be closely related to the ultimate injury."  Id. at 391.

Plaintiff's sole proffered evidence in support of his failure to train claim is the deposition testimony of two SLEDNET officers, Brian McGuckin and Chris Elliott,[10] and defendant Norrgard, who stated that they had not been trained to execute a search warrant with the use of a diversionary device.  However, plaintiff fails to point to evidence of a program-wide deficiency in training.  See Blankenhorn, 485 F.3d at 484-85 ("absent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training 'can only be classified as negligence on the part of the municipal defendant – a much lower standard of fault than deliberate indifference.'") (quoting Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)).  Moreover, plaintiff has failed to present

---

[10]     Neither SLEDNET, nor McGuckin, nor Elliot are named defendants in this action.

23

1  evidence that the execution of a search warrant using a

2  diversionary device was a recurring situation that carried with

3  it highly predictable consequences of constitutional violations.

4  See Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S.

5  397, 410 (1997) (holding that the generalized showing of risk

6  arising out of one instance of inadequate screening of an

7  officer's background did not demonstrate conscious disregard of

8  an obvious risk).  Finally, plaintiff has failed to proffer any

9  evidence that more or better training would have prevented the

10 alleged constitutional violation in this case.  Cf. Johnson v.

11 Hawe, 388 F.3d 676, 686 (upholding the plaintiff's municipal

12 liability claim where the plaintiff submitted the declaration of

13 a law enforcement expert who opined that the Police Department's

14 self-training program amounted to a failure to train police

15 officers about enforcement of the Privacy Act, which was a

16 recurring issue).[11]  Therefore, defendants' motion for summary

17 judgment regarding plaintiff's Monell claims arising out of an

18 alleged failure to train is GRANTED.

19     **B.   Fourteenth Amendment Due Process**

20     In his complaint, plaintiff alleges that defendants violated

21 his rights under the Fourteenth Amendment.  Plaintiff fails to

22 argue the merits of this allegation in his opposition.  The

23 Fourteenth Amendment to the United States Constitution provides

24 that no state shall "deprive any person of . . . property,

25 without due process of law."  The Fourteenth Amendment confers

26

27        [11]   Plaintiff has failed to produce any expert testimony
28 regarding the training policies of defendant City of South Lake
   Tahoe or defendant SLTPD.

substantive due process rights.[12]  See Foucha v. Louisiana, 504

U.S. 71, 80 (1992); United States v. Salerno, 481 U.S. 739, 746

(1987); Daniels v. Williams, 474 U.S. 327, 331 (1986).

> However, the use of substantive due process to extend
> constitutional protection to economic and property
> rights has been largely discredited.  See generally
> Gerald Gunther, Constitutional Law at 432-65.  Rather,
> recent jurisprudence restricts the reach of the
> protections of substantive due process primarily to the
> liberties "deeply rooted in this Nation's history and
> tradition."  Moore v. East Cleveland, 431 U.S. 494, 503
> (1977).

Armendariz, 75 F.3d at 1318-19.  Further, "[w]here a particular

Amendment 'provides an explicit textual source of constitutional

protection' against a particular source of government behavior,

'that Amendment, not the more generalized notion of substantive

due process' must be the guide for analyzing these claims."

Albright v. Oliver, 520 U.S. 266, 273 (quoting Graham v. Connor,

490 U.S. 386, 395 (1989)).  The Supreme Court has specifically

held that where the Fourth Amendment is the source of limitations

on the type of conduct challenged by a plaintiff's claims, that

Amendment, rather than the more general substantive due process

protections guaranteed by the Fourteenth Amendment, must govern

the plaintiff's claim.  Albright, 520 U.S. at 273; Graham, 490

U.S. at 395; see Armendariz, 75 F.3d at 1321.  As such, because

---

[12]   The Due Process Clause confers both procedural and
substantive rights.  Armendariz v. Penman, 75 F.3d 1311, 1318
(9th Cir. 1996) (citations omitted).  However, procedural due
process implicates the principle that "[t]he Fourteenth Amendment
places procedural constraints on the actions of government that
work a deprivation of interests enjoying the status of 'property'
within the meaning of the Due Process Clause."  Memphis Light,
Gas, and Water Div. v. Craft, 436 U.S. 1, 9 (1978).  Plaintiff
has failed to address any "property" he was deprived of due to
defendants' conduct.  As such, the court does not address this
claim.

the conduct plaintiff alleges occurred is the type of government action that the Fourth Amendment regulates, his substantive due process claim is precluded.   Therefore, defendants' motion for summary judgment regarding plaintiff's substantive due process claim is GRANTED.

### C.   Sixth Amendment

In his complaint, plaintiff alleges that defendants' conduct violated his Sixth Amendment rights.   Plaintiff also fails to argue the merits of this claim in his opposition.   The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."   The Sixth Amendment also provides the right to be informed of the nature and cause of the accusation, to confront adverse witnesses, to have compulsory process for obtaining witnesses, and to have the assistance of counsel. Plaintiff has failed to identify with any specificity how defendants allegedly violated his Sixth Amendment rights.   Nor has plaintiff proffered any evidence in support of this claim. Therefore, defendants' motion for summary judgment regarding plaintiff's Sixth Amendment claim is GRANTED.

/////
/////
/////
/////
/////
/////
/////
/////

**II.  California State Law Claims**[13]

    **A.  The Bane Civil Rights Act against the Individual Defendants**

       Plaintiff brings claims against all defendants for the excessive and unreasonable use of force in violation of the Bane Civil Rights Act, California Civil Code § 52.1.  Section 52.1 provides for a private right of action "if a person . . . interferes by threats, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution . . . ."  Cal. Civ. Code § 52.1 (West 2007).  The individual defendants rely upon the same contentions, affirmative, defenses, and points of law in moving for summary judgment on this claim as those relied upon in moving for summary judgment on plaintiff's federal claims.  As such, and for the reasons set forth above, defendants Heng, Adler, Auxier, McGuckin, Norrgard, Kingman, and Reagan's motion for summary judgment regarding plaintiff's § 52.1 claims for excessive force and unreasonable search and seizure in violation of the Fourth Amendment is GRANTED.  Defendant William's motion for summary judgment regarding plaintiff's § 52.1 claims for excessive force and unreasonable search and seizure in violation of his Fourth Amendment rights is DENIED.  All individual defendants' motion

_____

[13]    Plaintiff also alleged a claim for negligence in his complaint.  Defendants moved for summary judgment on this claim, and plaintiff's opposition fails entirely to discuss this claim.  The court construes plaintiff's silence on this claim as a non-opposition to defendant's motion.  Therefore, defendants' motion for summary judgment regarding plaintiff's negligence claim is GRANTED.

1  for summary judgment regarding plaintiff's § 52.1 claims for

2  violations of the Sixth and Fourteenth Amendments is GRANTED.

3  **B.  Assault and Battery against the Individual Defendants**

4  Plaintiff alleges state tort claims for assault and battery

5  against all defendants.  California assault and battery claims

6  are the counterpart to plaintiff's federal claims for excessive

7  force brought under § 1983.  <u>See</u> <u>Edson v. City of Anaheim</u>, 63

8  Cal. App. 4th 1269, 1274 (1988).  To sustain a claim of assault

9  and battery against a police officer under state law, plaintiffs

10  must provide evidence that the officer used unreasonable force.

11  <u>Id.</u>[14]<b>;</b> <u>See</u> <u>Johnson v. County of Los Angeles</u>, 340 F.3d 787, 794

12  (9th Cir. 2003).  For the reasons provided in the court's

13  analysis of plaintiff's § 1983 excessive force claim, plaintiff

14  has raised a triable issue of fact that defendant Williams used

15  excessive force.  Therefore, defendant William's motion for

16  summary judgment regarding plaintiff's assault and battery claims

17  is DENIED.  However, because plaintiff has failed to raise a

18  triable issue of fact regarding the liability of the other

19  individual defendants for excessive force, defendants Heng,

20  Adler, Auxier, McGuckin, Norrgard, Kingman, and Reagan's motion

21  for summary judgment regarding plaintiff's claims for assault and

22  battery is GRANTED.

23  Defendant Williams argues that he is immune from plaintiff's

24  state law claims of assault and battery pursuant to California

25  Government Code §§ 820.2 and 821.6.  Section 820.2 provides

26  _____

27  [14]  While the <u>Edson</u> court addressed only the state law
claim of battery, the court's reasoning can be extended to apply

28  the same standard to the claim of assault.  <u>See</u> <u>Johnson v. County</u>
<u>of Los Angeles</u>, 340 F.3d 787, 794 (9th Cir. 2003).

immunity for police officers' discretionary decisions made during arrests.  Cal. Gov't Code § 820.2 (West 2007); <u>Blankenhorn</u>, 485 F.3d at 487.  However, it is well established that "this provision does not apply to officers who use unreasonable force in making an arrest."  <u>Blankenhorn</u>, 485 F.3d at 487 (citing <u>Scruggs v. Haynes</u>, 252 Cal. App. 2d 256 (1967); <u>Robinson v. Solano County</u>, 278 F.3d 1007, 1016 (9th Cir. 2002)).  Because plaintiff's claim against defendant Williams arises out of the alleged use of force against him, defendant Williams is not entitled to immunity pursuant to § 820.2.

Defendant Williams also asserts that § 821.6 immunizes him from liability for his conduct.  Section 821.6 provides that

> [a] public employee is not liable for injury caused by his instituting or prosecuting any judicial administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

"The provision's principal function is to provide relief from malicious prosecution."  <u>Blankenhorn</u>, 485 F.3d at 487-88 (citing <u>Kayfetz v. California</u>, 156 Cal. App. 3d 491 (1984)).  This immunity extends to actions taken in preparation for formal proceedings, including actions incidental to the investigation of crimes.  <u>Amylou R. v. County of Riverside</u>, 28 Cal. App. 4th 1205, 1209-10 (1994); <u>see also</u> <u>Blankenhorn</u>, 485 F.3d at 488 (citing <u>Phillips v. City of Fairfield</u>, 406 F. Supp. 2d 1101, 1118 (E.D. Cal. 2005).  Here, the alleged tortious conduct occurred during an arrest, not an investigations into plaintiff's guilt.  <u>See</u> <u>Blankenhorn</u>, 485 F.3d at 488.  Plaintiff's only relation to the execution of the search warrant was to run out of the house after a diversionary device was set off by SLTPD officers and SLEDNET

officers.  This case does not present the type of factual

circumstances in which § 821.6 has been held to apply.  See Karam

v. City of Burbank, 352 F.3d 1188 (9th Cir. 2003); Baughman v.

State of California, 38 Cal. App. 4th 182 (1995); Amylou R., 28

Cal. App. 4th 1205.  As such, defendant Williams is not entitled

to immunity pursuant to § 821.6.[15]

### C. False Arrest and Imprisonment against the Individual Defendants

Plaintiff also alleges that the individual defendants are

liable for false arrest and imprisonment.  "[T]he basis for the

tort of false imprisonment is the unlawful restraint of another's

liberty."  Scofield v. Critical Air Medicine, Inc., 45 Cal. App.

4th 990, 1000 (1996).  For the reasons provided in the court's

analysis of plaintiff's § 1983 unreasonable search and seizure

claim, plaintiff has raised a triable issue of fact regarding

whether defendant Williams had probable cause to arrest him.

Therefore, defendant William's motion for summary judgment

regarding plaintiff's false arrest and imprisonment claims is

DENIED.[16]  However, because plaintiff has failed to raise a

triable issue of fact regarding the liability of the other

---

[15]   Defendant Williams also argues that he is immune from
liability pursuant to California Penal Code § 835a, which allows
offices to use reasonable force to effect an arrest based upon
reasonable cause.  Because plaintiff has presented evidence
demonstrating triable issues of fact regarding whether the arrest
and the force used was reasonable, this section is inapplicable.

[16]   Plaintiffs again argue that defendant Williams is
entitled to immunity.  For the reasons set forth above, defendant
Williams is not entitled to statutory immunity.  Further, § 821.6
does not provide immunity for claims of false imprisonment.
Amylou R., 28 Cal. App. 4th at 1211 n.2 (citing Sullivan c.
County of Los Angeles, 12 Cal. 3d 710, 719-22 (1974).

individual defendants for unreasonable search and seizure,
defendants Heng, Adler, Auxier, McGuckin, Norrgard, Kingman, and
Reagan's motion for summary judgment regarding plaintiff's claims
for false arrest and imprisonment is GRANTED.

   **D.   Intentional Infliction of Emotional Distress against the Individual Defendants**[17]

      Plaintiff also brings claims for intentional infliction of
emotional distress arising out of defendant William's use of
force.  Defendant Williams argues that he is immune from suit
pursuant to California Government Code §§ 820.2 and 821.6.  For
the reasons set forth above in the court's analysis of
plaintiff's assault and battery claims, these statutory
provisions do not provide immunity for actions arising out of the
use of excessive force or arising out of acts that allegedly
happened during an arrest.  <u>See</u> <u>Blankenhorn</u>, 485 F.3d at 488.
Therefore, defendant William's motion for summary judgment
regarding plaintiff's claims for intentional infliction of
emotional distress is DENIED.

   **E.   *Respondeat Superior* Liability of the City and SLTPD**

      Plaintiff claims that the city is liable for all state law
tort claims pursuant to the doctrine of *respondeat superior*.
Plaintiff asserts that the officers committed the alleged acts
within the course and scope of their employment as police
officers for the city, and therefore, the city is vicariously

---

      [17]   For the reasons set forth above, plaintiff has failed
to identify any extreme or outrageous conduct by defendants Heng,
Adler, Auxier, McGuckin, Norrgard, Kingman, and/or Reagan;
therefore, their motion for summary judgment regarding
plaintiff's claim for intentional infliction of emotional
distress is GRANTED.

liable.   Defendants City of South Lake Tahoe and SLTPD move for
summary judgment on the grounds that under Cal. Gov. Code §
815.2(b), a public entity cannot be held liable for an injury
resulting from an act or omission of an employee of the public
entity where the employee is immune from liability.   Defendants
assert that defendant officers are immune under §§ 820.2 and
821.6.[18]

Cal. Gov. Code § 815.2(a) provides that a city is liable for
acts and omissions of its employees under the doctrine of
respondeat superior to the same extent as a private employer.
Unlike the rule against municipal liability under federal law set
out in Monell, California imposes liability on municipalities
under the doctrine of *respondeat superior*.   Robinson, 278 F.3d at
1016.   Under California law, a city's immunity depends upon
whether the police officers are immune.   Id.   For the reasons
provided in the court's analysis of plaintiff's § 1983 claims
against defendant Williams, plaintiff has raised a triable issue
as to whether defendant Williams, while operating in the course
of his employment, used excessive force and unreasonably seized
plaintiff Martin.   Further, as set forth above, defendant
Williams is not immune under California state law.   Thus, under
Cal. Gov. Code § 815.2(a), liability may flow to defendants City
of South Lake Tahoe and SLTPD for defendant William's actions
towards plaintiff.   Accordingly, defendants City of South Lake

---

[18]     Defendants also argue that a municipality cannot be
held liable under California Civil Code § 52.1.   Defendants fail
to cite to any on-point authority for this contention.   Contra
Gatto v. County of Sonoma, 98 Cal. App. 4th 744 (2002) (upholding
judgment against municipality for liability pursuant to § 52.1).

Tahoe and SLTPD's motion for summary judgment regarding *respondeat superior* liability arising out of plaintiff's state law claims is DENIED.

**III. Punitive Damages**

Finally, defendants move for summary judgment regarding plaintiff's request for punitive damages.  Defendants contend that there are no facts upon which plaintiff can support his claim for punitive damages.  In § 1983 cases, punitive damages may be assessed "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983).  Under California law, exemplary damages are allowed where it is proven by clear and convincing evidence that the defendant is guilty of oppression, fraud, or malice.  Cal. Civ. Code § 3294 (West 2007). Plaintiff wholly fails to respond to defendant's motion and argument with respect to punitive damages.  As such, the court construes plaintiff's silence as a non-opposition to defendant's motion.  Moreover, plaintiff has failed to proffer evidence supporting his broad allegations that defendants' actions were willful, reckless, and malicious.  As such, defendants' motion for summary judgment regarding plaintiff's claim for punitive damages is GRANTED.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED in part and DENIED in part.

/////

/////

33

1   (1)   Defendants Heng, Adler, Auxier, McGuckin, Norrgard,

2         Kingman, and Reagan's motion for summary judgment

3         regarding all of plaintiff's claims is GRANTED.

4   (2)   Defendant William's motion for summary judgment:

5         (a)   regarding plaintiff's § 1983 claims arising out of

6               alleged Fourth Amendment violations is DENIED.

7         (b)   regarding plaintiff's § 1983 claims arising out of

8               alleged Sixth Amendment violations is GRANTED.

9         (c)   regarding plaintiff's § 1983 claims arising out of

10              alleged Fourteenth Amendment violations is

11              GRANTED.

12        (d)   regarding plaintiff's § 52.1 claims arising out of

13              alleged Fourth Amendment violations is DENIED.

14        (e)   regarding plaintiff's § 52.1 claims arising out of

15              alleged Sixth Amendment violations is GRANTED.

16        (f)   regarding plaintiff's § 52.1 claims arising out of

17              alleged Fourteenth Amendment violations is

18              GRANTED.

19        (g)   regarding plaintiff's state law claims for

20              assault, battery, false arrest, false

21              imprisonment, and intentional infliction of

22              emotional distress is DENIED.

23        (h)   regarding plaintiff's state law claim for

24              negligence is GRANTED.

25        (i)   regarding plaintiff's claim for punitive damages

26              is GRANTED.

27  /////

28  /////

1       (3)   Defendants City of South Lake Tahoe and SLTPD's motions

2             for summary judgment:

3            (a)   regarding plaintiff's <u>Monell</u> claims for failure to

4                  train is GRANTED.

5            (b)   regarding plaintiff's *respondeat superior* claims

6                  for violations of § 52.1, assault, battery, false

7                  arrest, false imprisonment, and intentional

8                  infliction of emotional distress is DENIED.

9            (c)   regarding plaintiff's state law claim for

10                negligence is GRANTED.

11           (d)   regarding plaintiff's claim for punitive damages

12                is GRANTED.

13     Plaintiff's motion to amend the complaint solely to correct

14 the asserted mistake regarding defendant Williams' name in the

15 allegations of the complaint is GRANTED.  Plaintiff's amended

16 complaint does not supercede the foregoing order's regarding

17 defendants' motion for summary judgment.  Plaintiff is directed

18 to file a first amended complaint within ten (10) days of this

19 order.  Defendants may file an amendment to their previously

20 filed answer, reflecting any modifications as it relates to

21 plaintiff's corrections, within ten (10) days thereafter.

22     IT IS SO ORDERED.

23 DATED: July 26, 2007

24

25

26                                       _____

27              FRANK C. DAMRELL, JR.
               UNITED STATES DISTRICT JUDGE

28